IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEVEN O'BRIAN ALEXANDER,       )
                                )
            Petitioner,         )
                                )
     v.                         )      1:05CV1057
                                )
SHERWOOD MCCABE,                )
                                )
            Respondent.         )

**RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As reflected by the records before the Court and admitted in the petition, petitioner pled guilty to second-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon in cases 93 CRS 20511, 92 CRS 72439, and 92 CRS 72442, respectively. He entered his plea in Guilford County Superior Court on May 16, 1994. On August 25, 1994, petitioner was sentenced to life plus forty years imprisonment pursuant to the terms of his plea agreement. Petitioner did not directly appeal his case, and he did not file a motion for appropriate relief (MAR) in the Guilford County Superior Court until September 28, 2005. When this and a subsequent petition for certiorari filed with the North Carolina Court of Appeals were unsuccessful, petitioner filed a habeas petition in this Court on December 1, 2005.

Respondent requests dismissal on the ground that the petition is time-barred. Interpretations of the limitation periods found in 28 U.S.C. §§ 2244(d)(1) and 2255 have equal applicability to one

another.  Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999).  The one-year limitation period for habeas petitions starts running from the date the conviction becomes final at the end of direct review.  Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000). In a situation where a prisoner can, but does not, file a direct appeal, a conviction is considered final on the day judgment is entered.  United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001).

The Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA") and its amendments apply to all Section 2254 petitions filed after its effective date of April 24, 1996.  28 U.S.C. § 2244(d)(1); Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  A petitioner whose conviction became final prior to the effective date of AEDPA had one year from that effective date, up to and including April 23, 1997, to file a Section 2254 petition or some form of tolling motion.  Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998).

Here, petitioner did not file a direct appeal, so his conviction became final when judgment was entered on September 4, 1994.  See N.C. R. App. P. 4(a)(10 days to serve notice of appeal, amended effective October 18, 2001 to allow 14 days).  Because his conviction took place before the AEDPA's effective date, petitioner's one-year time period did not expire until April 23, 1997.  Even this comparatively extended period expired without him having filed a petition in this Court or having made any state court filings that would toll the running of the AEDPA limitation

period.  In fact, petitioner did nothing until he filed a motion for appropriate relief in September of 2005, more than a decade after his conviction became final and more than eight years after the AEDPA time limit expired.  Petitioner's belated attempts at relief do not revive the limitation period.  Minter v. Beck, 230 F.3d 663 (4th Cir. 2000).

The Fourth Circuit, as well as a number of courts, have held that the one-year limitation period is subject to equitable tolling in two limited circumstances.  Harris, supra; Sandvik, 177 F.3d at 1271 (collecting cases).  First, it may apply when the petitioner has been unable to assert claims because of wrongful conduct of the state or its officers.  Second, it may apply when extraordinary circumstances beyond the prisoner's control prevent him from timely filing despite diligent attempts to do so.  Pace v. DiGuglielmo, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); Harris, supra; Akins v. United States, 204 F.3d 1086 (11th Cir. 2000).

Petitioner has not advanced any grounds sufficient for equitable tolling in his petition, nor are such grounds apparent from the record.  Petitioner simply claims that he learned in 2005 that his imposed sentence differed from the sentence provided for in his plea bargain.  This assertion, even if true, does not merit equitable tolling, as it in no way suggests that extraordinary events or wrongful state conduct prevented petitioner from timely filing.  Further, petitioner's underlying argument is erroneous.[1]

---

[1] Petitioner's confusion regarding the terms of his sentence, particularly his attempt to distinguish a natural life sentence from a Class C life sentence, (continued...)

-3-

He specifically agreed to a life sentence in his plea agreement, and that sentence was clearly set out, including the term "natural life," in both his judgment and commitment form and stated in open court during the sentencing hearing. In short, petitioner was aware of his sentence, and there was no mistake in sentencing, let alone an extraordinary circumstance in which equity should step in to give the petitioner the benefit of his misunderstanding.

Because petitioner waited for more than nine years after the AEDPA's effective date to first seek collateral relief in the state courts, his petition is clearly time barred and should be dismissed as such.

**IT IS THEREFORE RECOMMENDED** that respondent's motion to dismiss (docket no. 6) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

/s/ Russell A. Eliason
**United States Magistrate Judge**

August 25, 2006

---

[1](...continued)
appears to result from a change in sentencing law. Under the Fair Sentencing Act ("FSA"), the applicable law at the time of petitioner's offenses, second-degree murder was punishable by a Class C life sentence or by imprisonment up to 50 years. N.C.G.S. § 14-1.1(a)(3)(1992). Petitioner's plea bargain specifically stipulated that he serve a life sentence rather than a term of years. A prisoner serving a life sentence of any kind under the FSA has no right to have his sentence reduced. He will spend the rest of his natural life in prison unless he is paroled or receives a commuted sentence. Credit for merit or good behavior only applies to structured sentences imposed for offenses occurring on or after October 1, 1994.